■ JOHN S. FORTUNATO, et al., Respondents, v AURORA DIESEL TRUCKS, LTD., Defendant-Appellant and Third-Party Plaintiff-Appellant-Respondent. PROSPECT CARTING Co., Third-Party Defendant-Respondent-Appellant.—Interlocutory judgment, Supreme Court, Bronx County, entered March 1,

1978, modified, on the law and the facts, to the extent of dismissing the third-party complaint, and otherwise affirmed, with one bill of costs, payable by defendant-appellant Aurora Diesel Trucks, Ltd. For several years prior to the day of the accident, plaintiff was employed by Prospect Carting Co., the third-party defendant, as a driver-laborer on a private sanitation truck owned by Prospect. Prior to such employment, he was similarly employed elsewhere for many years in the operation of the same type of sanitation truck and was familiar with the operation of its dumping machinery. Prospect's customers placed their garbage in sizable metal containers in preparation for dumping into Prospect's truck. Plaintiff's job was to drive the truck and help discharge the garbage into the truck. The operation of collection and disposal follows a regular pattern. The container is wheeled to the rear of the truck, where the hopper, a catch basin, is located and into which the garbage is dumped. The container is placed on a platform (carrier blade) affixed to the truck, and a hook, connected to a cable extending from the truck, is attached on each side of the container. The platform is mechanically lifted, powered by the truck's engine, to a fixed height, then the cables pull the container to tilt sharply into the hopper, disgorging the garbage. The mechanism then relaxes the cables to permit the container to assume its upright, standing position on the platform, which then lowers to the ground, the cables are detached and the empty container wheeled back. It was also plaintiff's job to manipulate a lever at the rear of the truck to commence the dumping operation. The machinery's designed function was first to lower a folding cover (packing blade) into the mouth of the hopper, pushing any garbage already there into the bowels of the truck, thus emptying the hopper for reception of new garbage. Then, without pause, the platform lifts to a point where the cables are then activated to tilt the filled container into the hopper. Thereafter, the mechanism stops, and plaintiff is again required to manipulate the lever to further activate the machinery so that the container can upright itself on the platform as the folding cover folds out of the hopper and the platform descends to the ground. The operation then stops again. The speed of the truck's engine is regulated by a "solenoid cable" and both must be so adjusted that the successive movements of the folding cover, platform and attached cables are synchronized and harmonized in timed sequence, else the mechanism may malfunction and cause one of the steps of the automatic operation to skip over into the next step, without performing. At times, the garbage within the container is obstructed, preventing the discharge of all or some of the garbage when the container reaches its titled position within the hopper. The unemptied garbage can be clearly observed only when the container returns to the ground. On such occasion, it was plaintiff's practice to first restart the machinery and, during the 10 to 15 seconds that the platform remained on the ground before ascending to the hopper, stand on the step on the rear of the truck, reach into the container and attempt to remove the obstruction or otherwise loosen the garbage. He testified that he performed this manual feat "thousands of times" without incident, and that, contrary to his employer's testimony, he was never instructed as to safe operating procedures, nor was it necessary in his case in the light of his experience. In August, 1974, one day prior to the accident, Prospect found the solenoid cable had broken after plaintiff complained of the slow performance of the dumping equipment. He was told to take the truck to defendant and third-party plaintiff Aurora for repair. Aurora installed a functional solenoid cable. At the first stop the following morning, a filled container was wheeled, as usual, to the rear of the truck, placed on the platform, the

cables were affixed, and the dumping machinery engaged. After the container completed its full cycle and descended to the ground, plaintiff noticed that the contents had not emptied; cardboard obstructed its free flow. He started the operation again and attempted to remove the obstruction in his usual fashion, during the approximately 15-second period before the platform would move. However, the platform raised quickly and unexpectedly, with plaintiff over the container's edge, and before the hopper cover first performed its function. As the container tilted into the hopper, plaintiff was pinned against its wall, causing the injuries alleged. In plaintiff's action against Aurora, he maintains essentially that the malfunction was due to Aurora's negligence in failing to time adjust and synchronize the truck's engine and newly installed solenoid cable. Aurora impleaded Prospect as a third-party defendant. Liability and apportionment of damages were the only issues before the jury. Liability was resolved in favor of the plaintiff and against the defendant Aurora. In the third-party action, liability was apportioned 88% to Aurora and Prospect's contribution was fixed at 12%, on the ground that it failed properly to instruct plaintiff as to the operation of the garbage disposal mechanism. The verdict in negligence against Aurora is supported by the weight of the evidence. The verdict against Prospect is not so supportable, and accordingly, we modify the judgment by dismissing the third-party complaint. Prospect's failure to give instructions to plaintiff, a much experienced operator of the machine in question and of dumping procedures into the subject truck, did not contribute to or constitute a proximate cause of plaintiff's injuries. We have examined the other issues raised and find them without merit. Concur—Kupferman, J. P., Sandler, Bloom, Lupiano and Ross, JJ.